UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-5076
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

DAVID NORMAN BLACKWELL,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

(January 6, 1994)

Before KING and JOLLY, Circuit Judges, PARKER,[*] District Judge.

Parker, District Judge:

Defendant-Appellant David Norman Blackwell (Blackwell) was
convicted of impersonating a federal officer, in violation of 18
U.S.C. § 913. He has presented us with four issues on appeal:

> (1) whether the trial court erred in failing to grant
> the defendant-appellant's motion to dismiss for violation
> of the Speedy Trial Act (the Act);
>
> (2) whether the defendant-appellant was denied effective
> assistance of counsel;
>
> (3) whether the evidence presented at trial was
> insufficient on which to find the defendant-appellant
> guilty beyond a reasonable doubt of the crime of
> impersonating a federal officer;
>
> and

_____

[*] **Chief Judge of the Eastern District of Texas, sitting by
designation.**

1

(4) whether the trial court misapplied the United States Sentencing Guidelines when it sentenced the defendant-appellant.

Because we hold that the trial court erred in failing to grant the defendant-appellant's motion to dismiss on Speedy Trial Act violation grounds, and accordingly reverse and render a dismissal of this case with prejudice, we have no occasion to address Blackwell's other arguments on appeal.

## I. The Facts and Circumstances of This Case and 18 U.S.C. § 3161

Defendant-Appellant Blackwell was indicted on March 20, 1991 for violating 18 U.S.C. § 913 (impersonating a federal officer), arrested on this charge on September 20, 1991, and brought before a United States Magistrate Judge for his initial appearance on the charge on October 3, 1991.  Blackwell was tried on June 29, 1992.

The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, requires that federal criminal defendants pleading not guilty be tried within seventy days of their indictment or their first appearance before a judicial officer, whichever occurs last.  18 U.S.C. § 3161 (c)(1); *United States v. Kington*, 875 F.2d 1091, 1107 (5th Cir. 1989).[1]  Accordingly, the Speedy Trial Act's "clock" in this case started running October 3, 1991, as Blackwell entered a plea of not

---

[1] Specifically, the Act provides that:
    In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, *or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending*, *whichever date last occurs*.
18 U.S.C. § 3161 (c)(1) (emphasis added).

2

guilty at his arraignment of October 17, 1991.

The district court initially set Blackwell's trial for November 25, 1991.

From October 3, 1991, the Speedy Trial Act clock ran uninterrupted for thirty-one days -- until it was first "stopped," or perhaps more accurately, "paused" in accordance with the Act's excludable time provisions, on November 4, 1991.[2]

On November 4, 1991, Blackwell and his co-indictee and then-co-defendant (later severed), Michael Kayne McDonald, filed a motion for continuance for sixty days. Along with this motion for continuance, the defendants filed a "waiver" of their personal speedy trial rights under the Speedy Trial Clause of the Sixth Amendment and under the Speedy Trial Act. This November 4, 1991 motion was quite "boilerplate" -- stating in conclusory fashion only that: "Defendants are in need of additional time to adequately prepare for their defense and the Assistant United States Attorney does not Oppose this request" (motion paragraph three); and "Defendants and Defendants [*sic*] counsel request a sixty (60) day continuance[.] Defendants attach hereto a 'waiver of rights' to a speedy trial" (motion paragraph four).

---

[2] The Act provides that the accrual of the 70 days will be tolled under particular circumstances, such as when motions are pending before the district court or during a continuance where the district court finds on the record that the ends of justice outweigh the interests of the public and the defendant in a speedy trial.
*United States v. Willis*, 958 F.2d 60, 62 (5th Cir. 1992) (citing 18 U.S.C. § 3161 (h)(8)).

4

This motion paused the Speedy Trial Act clock for three days -- from and including November 4, 1991 (when the motion was filed), through and including November 6, 1991 (when the trial court entered an order granting the motion). *See* 18 U.S.C. § 3161 (h)(1)(F) (explaining that among the periods of delay to be excluded in computing the time within which the trial of any offense contained in an information or indictment must commence is "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). *See also e.g., United States v. Kington*, 875 F.2d 1091 (5th Cir. 1989) (explaining that when the time is paused on the Speedy Trial Act clock due to the pendency of a motion, that means that all the days between and including the day of commencement and the day of termination of the particular motion proceedings are excluded from the computation of the time limitations specified in § 3161). However, the government is wrong in its contention that the days *during* the continuance countenanced in this November 6, 1991 order are properly "excludable" from the Speedy Trial Act's seventy day calculus. The government's argument notwithstanding, we cannot regard the trial court's November 6, 1991 order as satisfying the Act's ends of justice requirement imposed by the Act in order for the duration of such a continuance itself to be deemed excludable.

The Speedy Trial Act is plain-speaking. The Act states that among the periods of delay properly excluded from the trial court's computation of the time within which the trial of an offense

brought by way of an information or indictment must be commenced, is:

> (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, *if* the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. *No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.*

18 U.S.C. § 3161 (h)(8)(A) (emphasis added). *See also United States v. Willis*, 958 F.2d 60, 62 (5th Cir. 1992).

The November 6, 1991 order stated that the trial court *"considered"* the defendants' November 4, 1991 motion for continuance, and, having so considered it, the trial court determined that the pre-trial conference and the trial date previously scheduled for the case needed to be "upset and [will be] reset in the ordinary course."[3] The specific language in § 3161 (h)(8)(A) states periods of delay are not excludable unless the court sets forth ends of justice findings either orally or in writing. The record in this case does not reflect such findings. *See United States v. Saltzman*, 984 F.2d 1087, 1090-1091 (10th Cir.) (reaffirming "the importance of *enunciating* the 'ends of justice'

---

[3] Presumably in its "ordinary course," the trial court reset Blackwell's new trial date through a minute entry to the docket of *January 8, 1992.* Through this minute entry, the trial court on January 8, 1992 reset Blackwell's trial *for May 26, 1992.*

findings;" and quoting *United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir. 1989), to the effect that "[f]ailure to address these issues on the record creates the unnecessary risk of granting continuances for the wrong purposes, and encourages over-use of this narrow exception."), *cert. denied*, -- U.S. --, 113 S.Ct. 2940 (1993). *See also United States v. Rodriguez*, 824 F. Supp. 657, 661 (W.D. Tex. 1993) ("Other courts have recognized that when a judge gives no indication that a continuance was granted upon a balancing of the factors specified by the Speedy Trial Act, the danger is great that every continuance will be converted retroactively into a continuance creating excludable time, which is clearly not the intent of the Act.") (citing cases).

With regard to the defendants' "waiver" of their Speedy Trial Clause and Speedy Trial Act rights, as this Court explained in *Willis*:

> In *Kington*, we joined all other circuits which have addressed the question in recognizing that the provisions of the Speedy Trial Act are not waivable by the defendant.[ ] The Act is intended both to protect the defendant from undue delay in his trial *and to benefit the public* by ensuring that criminal trials are quickly resolved. Allowing the defendant to waive the Act's provisions would compromise *the public interest* in speedy justice. In the vast majority of cases, the defendant will be quite happy to delay the final determination of his guilt or innocence. *The Act's central intent to protect society's interests requires that a defendant's purported waiver of his rights under the Act be ineffective to stop the speedy trial clock from running.*

*United States v. Willis*, 958 F.2d 60, 62 (5th Cir. 1992) (citations omitted; emphasis added). *See also United States v. Saltzman*, 984 F.2d 1087, 1091 (10th Cir.) ("The Government contends that Mr. Saltzman knowingly waived his right to a speedy indictment. This

7

contention fallaciously assumes a defendant has the authority to waive the speedy indictment provision. The right to a speedy indictment belongs to both the defendant and society.[ ]" * * * An effective waiver occurs only if the judge considered the defined factors and concluded the ends of justice are served by an acceptance of the defendant's waiver.") (citation omitted), *cert. denied*, -- U.S. --, 113 S.Ct. 2940 (1993). *Compare Barker v. Wingo*, 407 U.S. 514 (1972) (holding that criminal defendants *may* waive their fundamental Sixth Amendment right to a "speedy trial," despite the facts (*inter alia*) that: "[t]he inability of courts to provide a prompt [criminal] trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system.[ ]") (citing REPORT OF THE PRESIDENT'S COMMISSION ON CRIME IN THE DISTRICT OF COLUMBIA 256 (1966)).

Also, with regard to Defense Counsel's purported "need" for more time to prepare for trial, the Act is clear that the trial court *must* consider -- as part of its ends of justice analysis in a case such as this one, which is not so unusual or complex that it is (facially) unreasonable to expect adequate preparation for pretrial proceedings or for trial itself within the time limits established by the Act's § 3161 (c)(1) -- whether the failure to grant the continuance "would deny counsel for the defendant or for the Government the reasonable time necessary for effective

8

preparation, *taking into account the exercise of due diligence*." 18 U.S.C. § 3161 (h)(8)(B)(ii & iv) (emphasis added). The record in this case does not reflect that Defense Counsel's exercise of due diligence was considered by the trial court.

The Act calls upon the federal district courts to undertake contemporaneous, on-the-record, "ends of justice" analyses before they can count their continuances as excludable time under the Speedy Trial Act. The Act unambiguously and unconditionally tells the trial courts *what they must consider* in the course of such analyses. In light of the lack of an "ends of justice" analysis by the trial court in this case, the time during the continuance granted by the trial court's order of November 6, 1991 was not excludable from the seventy day time limitation imposed by the Speedy Trial Act. Thus, the Act's clock kept running without interruption for forty more days -- from November 7, 1991 until (but not including) December 17, 1991, the day the government filed a motion (to sever the defendants) pausing the clock.

The Speedy Trial Act's seventy day time limitation was passed in Blackwell's case on Sunday, December 15, 1991; December 15, 1991 was the seventieth non-excludable day to pass from the day of Blackwell's initial appearance (October 3, 1991). As of Monday, December 16, 1991, Defendant-Appellant and the public were denied their entitlement to Blackwell's speedy trial.

Today we reemphasize that *Willis* provides a bright line for the district courts to follow. In the absence of contemporaneous, articulated on-the-record findings for extending the time for trial

9

past seventy days amounting to an acceptable ends of justice analysis, Defendant-Appellant is entitled to have his case dismissed. *See* 18 U.S.C. § 3162 (a)(2). This is not a case in which the defendant has induced the district court to misapply the Act and then attempted to rely upon that error in order to obtain a dismissal of indictment. *Compare Willis, supra* at 63 (noting that "[d]ismissal is a sharp remedy, and we have been reluctant to impose it where the defendant has induced the district court to *misapply* the Act and then relies upon that error to seek dismissal") (citing *United States v. Eakes*, 783 F.2d 499, 503 (5th Cir. 1986); emphasis added).

## II. The Facts and Circumstances of This Case and the Dismissal With Prejudice Sanction Under 18 U.S.C. § 3162

The dismissal of an indictment required by the Act may be either with or without prejudice. 18 U.S.C. § 3162 (a)(2). While it is generally true that the *trial* court is best situated to decide whether to dismiss indictments with or without prejudice in light of a Speedy Trial Act violation (*compare e.g., Willis, supra* at 64), in this particular case we hold that the dismissal of the indictment against Blackwell must be with prejudice. Under the facts and circumstances of this case, it is obvious that there simply is no acceptable alternative to granting Blackwell a dismissal of his indictment with prejudice.

We are again well guided by the Act. In determining whether to dismiss a case with or without prejudice, § 3162 (a)(2) mandates that the courts shall consider (along with any other relevant factors in the particular case not expressly identified by the

10

statutory provision) each of the following factors:

    1.  the seriousness of the offense;

    2.  the facts and circumstances of the case which led to the dismissal;

    and

    3.  the impact of a reprosecution on the administration of this chapter and on the administration of justice.

We have carefully considered all of the statutorily-specified factors of consideration. Defendant-Appellant Blackwell has been incarcerated on the charge of impersonating a federal officer since his September 30, 1991 arrest on the charge. Thus, while the maximum time of incarceration Blackwell could receive for committing the offense of impersonating a federal officer is three years (*see* 18 U.S.C. § 913), he has already been incarcerated for over two years. If we remanded this case to the trial court for it to determine whether to dismiss the indictment against Blackwell with or without prejudice, and the trial court actually *selected* the without prejudice "alternative," a reprosecution would work a manifest injustice upon Blackwell -- given the time he has already effectively "served" for this conviction which we reverse today due to the Speedy Trial Act violation in this case.

### III.  Conclusion

    For the foregoing reasons, we **REVERSE** the conviction and sentence of Defendant-Appellant Blackwell and **RENDER** the one count indictment against Blackwell at issue **DISMISSED WITH PREJUDICE**.

    **It Is So Ordered.**